RICKERSON vs. THE STATE OF GEORGIA.

1. Motion for new trial being made in term, and by an order, set down for hearing in vacation, and the brief of evidence being filed during the term, but not approved by the court:

*Held,* that approval at the time of hearing the motion was sufficient, and the judge having then approved and ordered the brief to be filed, it could come up as a part of the record, though the clerk did not enter the filing after the approval, but left the evidence of filing to stand as entered on the brief during the term. (Headnote by the court.)

2. Where the evidence tending to show the *corpus delicti,* on a trial for murder, made a close case, and rested, in part, on whether a certain red stain in the sand was blood or not; and where a physician, who was a witness for the defendant, stated that he would not testify that anything was blood unless he had analyzed it and knew it to be blood, it was error tending to the injury of the defendant for the presiding judge to say to the witness that, if he should come down town and find a man lying on the sidewalk with his throat cut, and should find red spots on the pavement, would he not say that was blood?

3. It was error to refuse to charge that, if there was apparent conflict in the evidence, it was the duty of the jury to reconcile it if they could, and not impute perjury to any witness.
January 25, 1887.

New Trial. Practice in Superior Court. Criminal Law. Charge of Court. Evidence. Before Judge SIMMONS. Bibb Superior Court. October Term, 1885.

Reported in the decision.

CAMP & ANDERSON, for plaintiff in error.

CLIFFORD ANDERSON, attorney-general; JOHN L. HARDEMAN, solicitor-general, for the State.

BLANDFORD, Justice.

The plaintiff in error was indicted, tried and convicted, by the superior court of Bibb county, of the offence of murder, in that, it was alleged, he had killed and murdered Harrison Brown.

2. In all cases of violations of the criminal laws, there are two things necessary for the State to prove : first, that there has been a crime committed—that is called the *corpus delicti;* and next, that the accused committed the crime. The evidence in this case showed that, near the track of the Central Railroad there was found a small place in the sand, a few inches in diameter, which Dr. Hall, who was called there to examine it, thought was blood, but would not say was blood. He noticed particularly that from that point to the railroad track, where the body of Harrison Brown was found, and was supposed to have been placed, there was no blood or appearance of blood. His body was found on the track, greatly mangled by the cars, so much so that it could not be recognized except from the clothing found upon the body. This is all the evidence, independent of the confessions of the accused, as to the *corpus delicti*. The evidence connecting the accused with the crime is this : It was shown that, on the evening preceding the night on which it is said this man was killed, the accused and Harrison Brown were seen together, Harrison Brown driving a hack and the accused being in it, and that they were quarrelling; the witness did not testify as to anything that was said between the parties; he did not hear anything that was said, but he said they were quarrelling. Later on in the night, the accused was heard to inquire for Harrison Brown. Harrison Brown went, at a late hour of the night, and put up his horse and hack. At that time there was a strange man—not the accused—in the hack with him. He appeared to be drinking. The accused was seen, at a still later hour of the night, beyond where this body was found, by a man named Cherry, between twelve and one o'clock; and that is all the evidence going to connect the accused with the crime, except his confessions. Two persons, who were confined in jail with the accused, testified to confessions made by him, that he had borrowed the knife of Harrison Brown, had stabbed him and killed him, and put his

body on the railroad track. That is the substance of the confessions. While Dr. Paine, a witness for the defendant, was upon the stand, he stated that he would not testify that anything was blood unless he had analyzed it and knew it to be blood. The presiding judge remarked to him that, if he should come down town and find a man lying on the sidewalk with his throat cut, and should find red spots upon the pavement, would he not say that was blood? We think that this remark of the presiding judge was error, under the peculiar facts of this case, it being quite a close case, under the evidence. It may have prejudiced the accused in the minds of the jury; it may have induced them to believe that the *corpus delicti* was sufficiently shown by the testimony of the State.

3. The court was requested by counsel for the defendant to charge the jury that, if there was apparent conflict in the evidence, it was the duty of the jury to reconcile it if they could, and not impute perjury to any witness. This charge was refused by the court, and in that we think the court committed error. We think he should have given the law on that point in charge to the jury, that where there appears to be a conflict in the testimony, the jury should try, if they can, to reconcile it, considering the whole of the testimony and from it finding what the truth is; but if it cannot be reconciled, the jury must determine which witnesses they will believe, and from that find their verdict as to what the truth is in the case. This principle of law is not only well-settled by this court, but is laid down as one of the rules by Starkie in his work on evidence. 1 Starkie, 865. It is a well-recognized rule by writers on evidence, and it has been recognized by repeated decisions of this court. We think the court erred in not giving the request as prayed for.

Judgment reversed.